IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| **ROBERT C. HEFFNER, JR.** | * | |
| | * | |
| **Plaintiff** | * | |
| | * | **Civ. No.:     PJM 11-3369** |
| **v.** | * | |
| | * | |
| **ELMORE, THROOP & YOUNG, P.C.,** | * | |
| **et al.** | * | |
| | * | |
| **Defendants** | * | |

## <u>MEMORANDUM OPINION</u>

Robert C. Heffner, Jr. has sued Ballenger Creek Meadows Homeowners Association, Inc. ("Ballenger Creek") and the law firm of Elmore, Throop & Young, P.C. ("Elmore"), alleging violations of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, *et seq.*, and the Maryland Consumer Debt Collection Act, MD. CODE ANN., COM. LAW § 14-201, *et seq.*, against both Defendants, and alleging a violation of the Maryland Consumer Protection Act, CODE ANN., COM. LAW § 13-101, *et seq.*, against Ballenger Creek only.  Elmore has filed a Motion to Dismiss, or in the Alternative, for Summary Judgment.  [Docket No. 8.]  Ballenger Creek has filed a Motion to Dismiss, or in the Alternative, for Summary Judgment, incorporating the arguments made in Elmore's Motion.  [Docket No. 22.]  On April 23, 2012, following a hearing, the Court issued an oral opinion granting Ballenger Creek's Motion as to the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, and taking all other arguments under advisement.[1]

Because the parties have submitted and cited to evidence outside the four corners of the Complaint, the Court will consider the pending Motions as Motions for Summary Judgment.  *See* FED. R. CIV. P. 12(d); 56(a).  For the reasons that follow, Ballenger Creek's

---

[1]   The Court also ruled on other pending matters unrelated to the Motions considered here.

Motion for Summary Judgment will be **GRANTED**, and Elmore's Motion for Summary

Judgment will be **GRANTED**.

## I.

On July 11, 2006, Heffner and his wife purchased property in Frederick, MD.

Ownership of the property included membership in Ballenger Creek, an incorporated

homeowners association governed by a recorded Declaration of Covenants and Bylaws (the

"Homeowners' Declaration" or "Declaration").  The Declaration obligated the property owners

to make monthly payments towards their assessed portion of Ballenger Creek's annual expenses

and also contained an acceleration provision, which allowed Ballenger Creek to demand the

entire balance of the annual assessment upon default of any monthly payment.

In 2009, Heffner and his wife divorced, and Heffner fell behind on mortgage and

homeowners' association payments.  On June 2, 2009, he filed for bankruptcy under Chapter 13

of the U.S. Bankruptcy Code in the U.S. Bankruptcy Court for this District.  On May 24, 2011,

he received a discharge in bankruptcy, pursuant to 11 U.S.C. § 1328(a).  On July 1, 2011, the

mortgagee of Heffner's property, through a substitute trustee, instituted a foreclosure action

against said property in the Circuit Court for Frederick County, Maryland.  On September 19,

2011, the property was sold in foreclosure.  From June 2, 2009, the time Heffner filed for

bankruptcy, through September 19, 2011, the date of the foreclosure sale, Heffner and his now

ex-wife remained record title holders of the property.[2]

Ballenger Creek retained the Elmore firm to collect the lapsed homeowners'

association assessments and other amounts that Heffner owed.  On July 26, 2011, two years after

---

[2]   Heffner contends that he moved out of the property before he filed the bankruptcy petition
but concedes that his ex-wife continued to live there for some undetermined time thereafter.
Because the Heffners remained record title holders through the date of the foreclosure sale,
who actually lived in the property and for what period of time is irrelevant.

Heffner filed his petition for discharge in bankruptcy, and more than six weeks before the

foreclosure sale occurred, Elmore sent a letter to Heffner notifying him of Ballenger's intention

to create a lien on the property for the overdue assessments and the attendant fees and costs,

which, as of the date of the letter, totaled $3,521.67.  The letter stated that if payment was not

received within 15 days of the letter, Ballenger would exercise its prerogative to accelerate the

maturity of any remaining installments of the annual assessment and the amount of those

accelerated installments would be included in the lien.  On September 15, 2011, four days before

the foreclosure sale, Elmore in fact recorded a lien in the Land Records of Frederick County

against the property in the amount of $3,896.67 for assessments covering the period from

October 1, 2009 through December 31, 2011, plus interest and late fees accruing through July

31, 2011, and collection costs and attorneys' fees through the date of recordation of the lien

statement.  On December 14, 2011, Defendants sued Heffner in the Frederick County District

Court, seeking to collect assessments and late fees, interest, attorneys' fees, and collection costs

for the time period of July 2009 through September 19, 2011.[3]

## II.

Under Rule 56(a), summary judgment is appropriate when there is no genuine

dispute as to any material fact, and the movant is entitled to judgment as a matter of law.  FED. R.

CIV. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).  A dispute of fact

is genuine "if the evidence is such that a reasonable jury could return a verdict for the

---

[3]    Heffner also alleges in the Complaint that on November 29, 2011, subsequent to the
foreclosure sale, Elmore sent him a letter seeking to collect $573.63 in overdue assessments
and the attendant fees and costs for the period of September 19, 2011 through December 31,
2011, and notifying him of Ballenger's intention to create a lien for that amount.  Although
as of the date of the letter, the property had already been sold in foreclosure, both the
Maryland Department of Assessments and Taxation and the Frederick County Land Records
continued to list Heffner and his ex-wife as owners of record.  In any event, the overdue
assessments sought in this letter were accelerated prior to the foreclosure sale.

nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "The party

opposing a properly supported motion for summary judgment 'may not rest upon the mere

allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that

there is a genuine issue for trial.'" *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d

514, 525 (4th Cir. 2003) (alteration in original) (quoting FED. R. CIV. P. 56(e)). In considering a

motion for summary judgment, the Court must "draw all justifiable inferences in favor of the

nonmoving party." *Masson v. New Yorker Magazine, Inc.*, 501 U.S. 496, 520 (1991) (citing

*Anderson*, 477 U.S. at 255). The court must, however, also abide by the "affirmative obligation

of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial."

*Bouchat*, 346 F.3d at 526 (internal quotation marks omitted) (quoting *Drewitt v. Pratt*, 999 F.2d

774, 778-79 (4th Cir. 1993), and citing *Celotex Corp*, 477 U.S. at 323-24).

### III.

All of Heffner's claims are premised on his assertion that Defendants sought to

collect a debt that was not lawfully owed. *See generally* First Amended Class Action Complaint

[Docket No. 25]; Fair Debt Collection Practices Act, 15 U.S.C. § 1692, *et seq.*; Maryland

Consumer Debt Collection Act, MD. CODE ANN., COM. LAW § 14-201, *et seq.*; Maryland

Consumer Protection Act, CODE ANN., COM. LAW § 13-101, *et seq.*

Heffner argues that the debts sought were not owed because (1) the debts were

discharged in bankruptcy, and (2) a portion of the debts accrued after the property was sold in

foreclosure. To the first point, Defendants counter that they only sought to collect debts that

accrued after Heffner filed his bankruptcy petition in June 2009. The debts they sought to

collect, they say, were all post-petition, and thus were not included in the Chapter 13 discharge.

To the second point, Defendants argue that they accelerated Heffner's monthly assessments for

2011 before the property was sold in foreclosure, in accordance with the terms of the Homeowners' Declaration.  Thus, these debts accrued prior to the foreclosure sale.

The disputes here are legal, rather than factual, in nature.  No dispute of fact precludes summary judgment, so the question before the Court is whether Defendants are entitled to judgment as a matter of law.  *See Celotex Corp*, 477 U.S. at 323-24.

## A.

Heffner's argument that Defendants sought to collect debts that accrued after the property was sold in foreclosure is easily dispatched.  The terms of the Homeowners' Declaration make clear that Ballenger Creek was entitled to accelerate monthly installments of the annual assessment and attendant costs as soon as Heffner defaulted.  That they did so prior to the foreclosure sale on September 19, 2011 is evident both from the July 26, 2011 letter to Heffner and the resulting Statement of Lien filed on September 15, 2011.  Heffner does not dispute the terms of the Declaration or deny the recording of the Statement of Lien.  In fact, his brief offers no explanation for why acceleration was unwarranted or inappropriate.  At oral argument, the best counsel could offer was that it seemed "inequitable" to pursue debts against Heffner for assessments that would have accrued after the property was sold in foreclosure.  This does not defeat Ballenger Creek's entitlement to exercise its acceleration rights pursuant to the Declaration.

Accordingly, the Court finds that Ballenger Creek and Elmore did not unlawfully attempt to collect debts that became due after Heffner's property was sold in foreclosure.

## B.

The question of whether the assessments and related fees that accrued after Heffner filed his bankruptcy petition were discharged in bankruptcy requires more comment.  In

general, debts arising after the filing of a bankruptcy petition are not dischargeable under §

1328(a) of the Bankruptcy Code.  *See In re Spencer*, 457 B.R. 601, 605 (E.D. Mich. 2011)

(citing 11 U.S.C. §§ 101(5), (12), & 1328(a); *In re Hester*, 63 B.R. 607, 609 (Bankr. E.D. Tenn.

1986)).  "Whether a claim arises before or after the commencement of a debtor's bankruptcy

case is a question of federal bankruptcy law."  *In re Georgetown Steel Co*., LLC, 318 B.R. 313,

327 (Bankr. D.S.C. 2004) (citing *Butler v. NationsBank, N.A.*, 58 F.3d 1022, 1029 (4th Cir.

1995); *Grady v. A.H. Robins Co., Inc. (In re A.H. Robins Co., Inc.)*, 839 F.2d 198, 203 (4th Cir.

1988)).  The question at bar is whether assessments made after the filing of the bankruptcy

petition—pursuant to the Homeowners' Declaration, which was in effect prior to the filing of

said petition—are properly considered "pre-petition" or "post-petition" claims.

      The Fourth Circuit has in fact decided this precise question.  *In re Rosenfeld*, 23

F.3d 833, 838 (4th Cir. 1994); *see also In re Guillebeaux*, 361 B.R. 87, 92 (Bankr. M.D.N.C.

2007) ("[T]he Fourth Circuit has held that homeowners' association assessments are

nondischargeable, postpetition debts that arise from a covenant running with the land.") (citing

*Rosenfeld*, 23 F.3d at 836-37).  In *Rosenfeld*, a homeowner filed a Chapter 7 bankruptcy petition

and was granted a discharge, including certain pre-petition homeowner association assessments.

*Rosenfeld*, 23 F.3d at 835.  The Fourth Circuit considered whether the housing cooperative

association violated the permanent stay when it brought suit against the debtor seeking

cooperative association dues that accrued subsequent to the debtor's filing of the petition but

prior to the discharge.  *Id.* at 835-36.  The court identified two, competing views that had

developed as to whether such assessments should be considered pre-petition or post-petition

claims.  *Id.* at 836-37.  One set of cases viewed the obligation to pay as a contractual one,

dependent on ownership of the property, and thus extinguished in bankruptcy when the contract

was entered into pre-petition.  *Id.* (citing *In re Rosteck*, 899 F.2d 694, 697 (7th Cir. 1990); *Matter of Wasp*, 137 B.R. 71, 73 (Bankr. M.D. Fla. 1992); *In re Hodge*, Case No. 90–10275–AT, 1992 WL 613691 (Bankr. E.D.Va. July 20, 1992); *In re Miller*, 125 B.R. 441, 443 (Bankr. W.D.Pa. 1991); *In re Cohen*, 122 B.R. 755, 758 (Bankr. S.D. Cal. 1991); *In re Turner*, 101 B.R. 751, 754–55 (Bankr. D. Utah 1989); *In re Elias*, 98 B.R. 332, 337 (N.D. Ill. 1989); *In re Montoya*, 95 B.R. 511, 514 (Bankr. S.D. Ohio 1988); *In re Behrens*, 87 B.R. 971, 975 (Bankr. N.D. Ill. 1988)).  A second set of cases viewed the obligation as arising once the dues are assessed, and so any dues assessed after the filing of the petition would not be discharged in bankruptcy. *Rosenfeld*, 23 F.3d at 837 (citing *In re Raymond*, 129 B.R. 354, 364 (Bankr. S.D.N.Y. 1991); *In re Hill*, 100 B.R. 907, 909 (Bankr. N.D. Ohio 1989); *In re Harvey*, 88 B.R. 860, 862 (Bankr. N.D. Ill. 1988); *In re Rink*, 87 B.R. 653, 654 (Bankr. D. Colo. 1987); *In re Horton*, 87 B.R. 650, 652 (Bankr. D. Colo. 1987)).  In reaching its decision, the *Rosenfeld* court considered the applicable Virginia statute, which provided for allocation of a cooperative's common expenses among its owners pursuant to a declaration, and the declaration at issue, which expressly stated that it was a covenant running with the land.  *Rosenfeld*, 23 F.3d at 837.  The court adopted the view set forth in the second set of cases, reasoning that "the obligation to pay assessments is a function of owning the land with which the covenant runs."  *Id*.  Accordingly, it found that "Rosenfeld's obligation to pay the assessments arose from his continued post-petition ownership of the property and not from a pre-petition contractual obligation."  *Id*.

        Just as in *Rosenfeld*, the Homeowners' Declaration governing Heffner's property expressly states that it shall be deemed to run with and bind the land.  Similarly, as in the case of the Virginia law considered in *Rosenfeld*, Maryland law supports the notion that homeowners' association assessments are obligations tied to the land at the time of ownership.  *See* Maryland

Homeowners Association Act, MD. CODE ANN., REAL PROP. §§ 11B–101 *et seq*.; *In re Mattera*,

203 B.R. 565, 570 (Bankr. D.N.J. 1997) ("There is no question that under Maryland state law,

the financial obligations of a unit owner of a condominium, time-share or cooperative are

covenants running with the land.") (internal citations omitted).  One difference between

*Rosenfeld* and the instant case is that *Rosenfeld* was decided in the context of a Chapter 7

bankruptcy, while Heffner filed for bankruptcy under Chapter 13.  Nevertheless, the reasoning

set forth in *Rosenfeld* can be imported here "because the definitions of 'debt' and 'claim', which

are key to this discussion, apply equally to Chapters 7 and 13."  *In re Mattera*, 203 B.R. at 570

(considering the *Rosenfeld* and *Rosteck* lines of cases in a Chapter 13 bankruptcy).  For these

reasons, *Rosenfeld* appears to require a finding that the assessments that accrued on Heffner's

property after he filed his bankruptcy petition were non-dischargeable, post-petition debts.

      In an attempt to avoid a straightforward application of Fourth Circuit precedent,

Heffner argues that the 1994 and 2005 amendments to the Bankruptcy Code overruled *Rosenfeld*.

Through these amendments, Congress added (and then amended) the following enumerated

exception to certain types of discharge:

> "a fee or assessment that becomes due and payable after the order for relief to a
> membership association with respect to the debtor's interest in a unit that
> has condominium ownership, in a share of a cooperative corporation, or a lot in a
> homeowners association, for as long as the debtor or the trustee has a legal,
> equitable, or possessory ownership interest in such unit, such corporation, or such
> lot, but nothing in this paragraph shall except from discharge the debt of a debtor
> for a membership association fee or assessment for a period arising before entry
> of the order for relief in a pending or subsequent bankruptcy case."

11 U.S.C. § 523(a)(16) (2010).  Heffner argues that by adding this provision, Congress implicitly

adopted the Seventh Circuit's reasoning in *Rosteck* (that such assessments are contractual, pre-

petition obligations) and rejected the reasoning set forth by the Fourth Circuit in *Rosenfeld* (that

such assessments are post-petition obligations that run with the land).  By specifically excluding

these assessments from discharge, goes the argument, Congress acknowledged that without this statutory exception, the assessments would otherwise be discharged. Heffner then points to § 1328(a)—the statute governing his own bankruptcy discharge—and notes that because this subsection incorporates certain exceptions identified in § 523(a), but it does not incorporate § 523(a)(16), the claims identified in § 523(a)(16) (namely, post-petition homeowner association assessments) must be discharged by § 1328(a).

The Court is not persuaded by Heffner's argument. He attaches undue significance to a section of the Bankruptcy Code the Court finds is wholly irrelevant to this case. Sections 523(a)(16) and 1328(a) are "mutually inapplicable based upon the plain language of the Bankruptcy Code." *In re Spencer*, 457 B.R. 601, 609 (E.D. Mich. 2011). By its terms, § 523(a) applies only to discharges under §§ 727, 1141, 1228(b), or 1328(b). It does not apply to a discharge, such as Heffner's, effected under § 1328(a). "When evaluating the dischargeability of debts under § 1328(a), the conditions of discharge set forth in § 523(a)(16) simply do not apply." *Id.*; *see also In re Danastorg*, 382 B.R. 585, 588 (Bankr. D. Mass. 2008) ("[S]ection 523(a)(16) is inapplicable to Chapter 13 cases, where the Debtor has an ongoing duty to pay postpetition obligations, such as utilities and condominium fees, as they come due."). The Court declines to infer that by *not* expressly connecting these unrelated sections, Congress intended to broaden the § 1328(a) discharge to include assessments that are excluded from other types of bankruptcy discharges. *See In re Foster*, 435 B.R. 650, 659 (9th Cir. BAP 2010) ("[W]e doubt the omission of § 1328(a) in § 523(a)(16) or vice versa evinces a legislative intent to discharge postpetition HOA dues under § 1328(a) when the debtor uses the cure and maintenance provisions under chapter 13 to stay in his or her property after the order for relief.").

Heffner's argument that *Rosenfeld* is no longer good law is further undermined by the numerous courts that have continued to follow *Rosenfeld* even after implementation of the 1994 and 2005 amendments to the Bankruptcy Code.  *See, e.g.*, *In re Hall*, 454 B.R. 230, 237-38 (Bankr. N.D. Ga. 2011) ("The Court finds the reasoning in *Rosenfeld* to be more persuasive, thorough, and consistent with the Code and Bankruptcy Rules than *Rosteck* and its progeny."); *In re Foster*, 435 B.R. at 659 (finding *Rosenfeld* to be "persuasive" in light of Washington law and the declaration and also to be "consistent with the RESTATEMENT (THIRD) OF PROPERTY: SERVITUDES § 7.9"); *In re Guillebeaux*, 361 B.R. 87, 92 (Bankr. M.D.N.C. 2007) (relying on *Rosenfeld* to find that homeowners' association assessments were post-petition debts for the purposes of being considered an administrative expense claim); *In re Rivera*, 256 B.R. 828, 835 (Bankr. M.D. Fla. 2000) ("*Rosenfeld* provides a more practical approach to the handling of cases than the contrary lines of authority."); *In re King*, 208 B.R. 376, 380 (Bankr. D. Md. 1997) ("[T]he law is settled that the obligation to pay condominium fees continues after the debtor's discharge."); *In re Smith*, 206 B.R. 113, 116 (Bankr. D. Md. 1997) ("The unpaid association charges arising after the date of the petition are post-petition obligations of the debtor which will not be discharged.").  Additionally, at least one court has found that by adding § 523(a)(16) to the Bankruptcy Code, Congress sought to affirm the reasoning in *Rosenfeld* over that in *Rosteck* and codify the obligation to pay post-petition assessments.  *See In re Hall*, 454 B.R. at 237-38 ("*Rosteck* was arguably overruled by the addition of section 523(a)(16) which excepts post-petition assessments from discharge in chapter 7 . . . There is no legislative history indicating that post-petition assessments are "claims." It is just as likely that Congress was implying that post-petition assessments are not really claims at all, and that the amendment was necessary to correct the mischaracterization of post-petition assessments as claims.").

Accordingly, the assessments and fees that accrued on Heffner's property pursuant to the Homeowners' Declaration after Heffner filed for bankruptcy on June 2, 2009 were not discharged in that bankruptcy. Ballenger Creek and Elmore were legally permitted to pursue recovery of these post-petition debts.

## IV.

For the foregoing reasons, Defendant Elmore, Throop & Young, P.C.'s Motion for Summary Judgment [Docket No. 8] is **GRANTED**, and Defendant Ballenger Creek Meadows Homeowners Association, Inc.'s Motion for Summary Judgment [Docket No. 22] is **GRANTED**.

A separate Order will **ISSUE**.


_____**/s/**_____
**PETER J. MESSITTE**
**UNITED STATES DISTRICT JUDGE**

**June 8, 2012**